IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM REBER, L.L.C.　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Civil Action No. 03 C 4174
　　　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Magistrate Judge Morton Denlow
MATSUSHITA ELECTRIC　　　　　　　)
CORPORATION OF AMERICA;　　　　　)
MATSUSHITA ELECTRIC　　　　　　　)
INDUSTRIAL CO., LTD.;　　　　　　　)
SONY ERICSSON MOBILE　　　　　　　)
COMMUNICATIONS (USA) INC. and　　)
SONY ERICSSON MOBILE　　　　　　　)
COMMUNICATIONS AB,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　)

**FILED**

**DOCKETED**
AUG 3 1 2004

AUG 2 5 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF MOTION

TO:　　See Certificate of Service

　　　　PLEASE TAKE NOTICE that on Monday, August 30, 2004 at 9:15 a.m. or as soon thereafter as counsel may be heard, we shall appear before the Honorable Judge Morton Denlow, or any other judge sitting in his stead, in the United States District Court for the Northern District of Illinois, Eastern Division, located at 219 S. Dearborn Street, Room 1350, Chicago, Illinois, and shall then and there present **PLAINTIFF'S MOTION TO VACATE MARCH 12, 2004 BIFURCATION ORDER,** a copy of which is attached hereto and hereby served upon you.

　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　Vasilios D. Dossas
　　　　　　　　　　　　　　Niro, Scavone, Haller & Niro
　　　　　　　　　　　　　　181 West Madison, Suite 4600
　　　　　　　　　　　　　　Chicago, Illinois 60602
　　　　　　　　　　　　　　(312) 236-0733
　　　　　　　　　　　　　　One of the Attorneys for William Reber, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM REBER, L.L.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 03 C 4174 |
| v. | ) | |
| | ) | Magistrate Judge Morton Denlow |
| MATSUSHITA ELECTRIC | ) | |
| CORPORATION OF AMERICA; | ) | |
| MATSUSHITA ELECTRIC | ) | |
| INDUSTRIAL CO., LTD.; | ) | |
| SONY ERICSSON MOBILE | ) | |
| COMMUNICATIONS (USA) INC. and | ) | |
| SONY ERICSSON MOBILE | ) | |
| COMMUNICATIONS AB, | ) | |
| | ) | |
| Defendants. | ) | |

*DOCKETED*
*AUG 31 2004*

*FILED*

*AUG 2 5 2004*

*MICHAEL W. DOBBINS*
*CLERK, U.S. DISTRICT COURT*

## MOTION TO VACATE
## MARCH 12, 2004 BIFURCATION ORDER

Plaintiff, William Reber, L.L.C. ("Reber"), respectfully moves this Court for an order vacating the Court's March 12, 2004 Order which (i) bifurcated the issues of liability and willful infringement from the issue of damages, (ii) stayed discovery on the issue of damages until resolution of the liability and willfulness issues and (iii) stayed discovery on attorney opinions. The factual bases supporting the March 12, 2004 order no longer exist and, for the reasons outlined below, Reber asks that the Court vacate its previous order and allow fully discovery to proceed.

In the March 12, 2004 Memorandum and Opinion, the Court held:

Further, in balancing the equities of this case, the balance weights in Defendants' favor. The Court is cognizant of the fact that Defendants are major and direct competitors in the wireless telephone market. *The financial information that would become available during discovery on the issue of damages is very sensitive and highly confidential.* The Court is

*162*

mindful of the fact that this case involves a small business going up against major international corporations, which have the resources to absorb expenses and delays more easily than Plaintiff, *but the potentially detrimental economic effect of inadvertent disclosure of sensitive financial information outweighs any prejudice to Plaintiff.* ...

Bifurcation of the issue of liability from the issue of damages is appropriate in this case. The volume of documents and witnesses with foreign origins, as well as the complexity of the damages calculation, create extenuating circumstances that warrant bifurcation. *More importantly, the balance of equities weighs in favor of Defendants because of the fact that they directly compete with each other in the wireless telephone market and inadvertent disclosure of their financial information would greatly prejudice them.*

(Exhibit A, at 12-13; emphasis added; citations omitted).

Since only one competitor remains in this case, the primary reason for bifurcation no longer exists.

Reber brought this action against six competing groups or companies. On June 10, 2004, this Court noted that Reber had settled with many of the groups and suggested that it might vacate its March 12 Order should Reber settle with all but one of the groups:

THE COURT:     Okay, and how many depositions would you anticipate? I mean depositions of whom?

MR. DOSSAS:     A 30(b)(6) of Sony Ericsson and Matsushita defendants, at the very least.

THE COURT:     On what topics? On what topics?

MR. DOSSAS:     Well, you know, we can't go into damages because of your bifurcation order, so basically infringement, liability.

THE COURT:     Okay. Although I'll tell you now, if you settle with one more, I mean if you're down to one defendant, I may vacate that. You know, I'd be more receptive to combining infringement and damages if there's only one defendant left.

2

MR. DOSSAS:    Well, maybe that's – We're hopeful that Matsushita is going to settle soon too, your Honor, and that may be exactly the situation we're faced with.

THE COURT:    Okay, because one of my principal concerns was trying to keep everybody else out of everybody else's business, and that will not be as important a concern if we're down to one defendant so there's a possibility.

MR. DOSSAS:    Then I think maybe we'll delay the depositions a little bit to see if that happens because we'd like to get everything in one swoop and get all the documents in one swoop, too.

(See Exhibit B, Transcript of Proceedings p. 12, line 13 to p. 13, line 14).

Reber has now settled with the Matsushita defendants and has moved for dismissal of these defendants. The Sony-Ericsson group is the only group that remains and, therefore, Reber moves this Court for relief from the March 12th Order.

Discovery in this case has confirmed that the dispute between Reber and Sony-Ericsson does not involve the complexity originally expected. Reber and all of the inventors of the patents-in-suit have produced their documents. These productions totaled approximately 5,500 pages. Sony-Ericsson has produced documents, including those that relate to commercial success, and those documents total approximately 7,800 pages. (Almost all of the Sony-Ericsson documents are in English.) The documents produced relate to a wide variety of infringement and validity issues. The Sony-Ericsson documents that relate to the damages issue could not possibly exceed those for all other issues; and they should not add substantial complexity to what is now an ordinary patent dispute.

3

Therefore, for all the reasons outlined above, Reber respectfully requests that this Court vacate its bifurcation Order of March 12, 2004.

WILLIAM REBER, L.L.C.

Raymond P. Niro
Dean D. Niro
Vasilios D. Dossas
Robert P. Greenspoon
William W. Flachsbart
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing **Notice of Motion** and **Motion To Vacate March 12, 2004 Bifurcation Order** was served on August 25, 2004 upon the below listed counsel of record by Hand Delivery to local counsel and facsimile to all counsel:

Thomas C. McDonough
Robert E. Browne
Timothy M. Morella
Neal, Gerber & Eisenberg L.L.P.
Two North LaSalle Street, Suite 2200
Chicago, Illinois 60602
(312) 269-5282
Fax: (312) 269-1747
**Attorneys for Sony Ericsson Mobile Communications
(USA) Inc. and Sony Ericsson Mobile Communications AB**

| | |
|---|---|
| Edward H. Rice | Morton Amster |
| Natalie J. Spears | Abraham Kasdan, Ph.D. |
| Marina N. Saito | Joseph M. Casino |
| Sonnenschein Nath & Rosenthal LLP | Kenneth M. Bernstein |
| 8000 Sears Tower | Amster Rothstein & Ebenstein LLP |
| 233 S. Wacker Drive | 90 Park Avenue |
| Chicago, Illinois 60606 | New York, New York 10016 |
| (312) 876-8000 | (212) 336-8000 |
| Fax: (312) 876-7934 | Fax: (212) 286-0854 |

**Attorneys for Matsushita Electric Corporation
of America and Matsushita Electric Industrial Co., Ltd.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

WILLIAM REBER, LLC,        )
                                    )
        Plaintiff,         )     Case No. 03 C 4174
                                      )
        v.               )     Magistrate Judge Morton Denlow

SAMSUNG ELECTRONICS
AMERICA, INC.; SAMSUNG
ELECTRONICS CO., LTD.; NOKIA
INC.; NOKIA CORPORATION;
SANYO NORTH AMERICA
CORPORATION; SANYO
ELECTRIC CO., LTD.;
MATSUSHITA ELECTRIC
CORPORATION OF AMERICA;
MATSUSHITA ELECTRIC
INDUSTRIAL CO., LTD.; SONY
ERICSSON MOBILE
COMMUNICATIONS (USA) INC.;
SONY ERICSSON MOBILE
COMMUNICATIONS AB; LG
ELECTRONICS U.S.A., INC.;
LG ELECTRONICS INC.,

        Defendants.

### MEMORANDUM OPINION AND ORDER

Plaintiff William Reber, L.L.C. ("Plaintiff" or "Reber") is the owner of two United

States patents, Nos. 5,584,070 and 5,701,258 (collectively the "Reber Patents"), that it claims

have been infringed by twelve defendants (collectively "Defendants") located in Asia, the

United States and Europe, and at least eighteen of their products.



PLAINTIFF'S
EXHIBIT
"A"

This case now comes before this Court on Defendants' motion to bifurcate the issue of liability from the issues of damages and willful infringement, and to stay all discovery regarding damages and willful infringement until a decision on liability has been reached. Plaintiff opposes this motion, claiming that having two separate trials and staying discovery on the issues of damages and willful infringement will be substantially prejudicial. The Court held an oral argument on this motion on March 1, 2004, at which time the Court announced its oral ruling from the bench. This Memorandum Opinion and Order explains the Court's rationale in greater detail. For the following reasons, this Court 1) bifurcates the issues of liability and willful infringement from the issue of damages; 2) stays discovery on the issue of damages until after the issues of liability and willful infringement have been decided; and 3) stays discovery of attorney opinions as they relate to willful infringement until it is clear that the issues of liability and willful infringement will be tried and that any defendant will raise an advice-of-counsel defense. The stay regarding discovery of such attorney opinions should be revisited after dispositive motions, if any, on the issue of liability are decided. In any event, Defendants will be given a brief period of time before trial to decide if they intend to raise the advice-of-counsel defense, and if so, expedited discovery will proceed on that issue so that the final pretrial order can be prepared, and trial can proceed, on the issues of liability and willful infringement.

2

# I. BACKGROUND

Plaintiff is a small Illinois company operated by a single individual, Dr. William Reber. Neither Plaintiff nor Dr. Reber makes or sells camera cell phones. Plaintiff sued Defendants for patent infringement arising out of camera-phones manufactured and sold by Defendants. Specifically, Plaintiff asserts one patent against all Defendants and one patent against two of the Defendants. The thirteen claims in the two patents are directed towards millions of wireless telephones in sixteen product lines sold since 2002.

Defendants can be divided into six distinct groups based on corporate affiliations. Defendants are the major players in the wireless telephone market. They compete directly with each other. Plaintiff has joined all of these defendants in one lawsuit rather than filing six separate lawsuits. The propriety of that tactic is not currently before the Court, however, the presence of six competing groups of companies complicates the discovery and trial of this case. Fortunately, the Defendants have shown great cooperation on the issue of developing a joint protective order and in discovery.

The patents at issue are United States Patent Nos. 5,584,070 ("the '070 patent") and 5,701,258 ("the '258 patent"). Dr. Reber is an inventor of both patents. The '070 patent concerns a wireless pager with a separable receiver unit and a transmitter unit. The '258 patent concerns a wireless pager with pre-stored images and methods and systems for use therewith.

3

Plaintiff intends to pursue a claim for willful infringement if the discovery supports such a claim. Nonetheless, Plaintiff has made discovery requests for attorney opinions to which Defendants have objected. Plaintiff seeks damages based on a reasonable royalty and has initiated discovery on the issue of damages. Defendants object. Plaintiff seek damages under 35 U.S.C. § 284, which permits additional damages available for willful infringement.

Defendants state that discovery will involve thousands of documents, many of which will need to be translated from various foreign languages into English. Additionally, the native tongue of many witnesses is not English. Many documents and witnesses are located outside the United States. Some Defendants have raised affirmative defenses, including that they are licensed to practice these inventions, that Defendants' wireless telephones are not equivalent to the wireless pagers recited in Plaintiff's patents, and that the patents are invalid.

Defendants have filed a motion pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, seeking to bifurcate the issue of liability from the issues of damages and willfulness for both discovery and trial. They claim that bifurcation will serve the interests of judicial economy, efficiency, and simplicity, without prejudice to Plaintiff's right to a jury trial. Plaintiff contends that bifurcation will make discovery and trial more expensive, delay the ultimate disposition of the case, and prejudice it.

Thus, the following issues are presented:

1) Whether the issue of liability should be bifurcated from the issue of damages for discovery and trial?

Answer: Yes

4

2) Whether the issue of willful infringement should proceed with the liability or damages phase of discovery and trial?

Answer: Liability phase, with a limited stay of discovery on the issue of attorney opinions.

## II. LEGAL STANDARDS

Rule 42(b) of the Federal Rules of Civil Procedure states:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed. R. Civ. P. 42(b). All of the rules of civil procedure, including Rule 42(b), should be read in light of the overarching principles set forth in Rule 1, which states that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Consequently, bifurcation in patent cases, as in others, is the exception, not the rule. *Pfizer Inc. v. Novopharm Ltd.*, No. 00 C 1475, 1000 U.S. Dist. LEXIS 18153, at *4 (N.D. Ill. Dec. 13, 2000). Separate trials should not be ordered unless they are clearly necessary. *Real v. Bunn-o-Matic Corp.*, 195 F.R.D. 618, 619 (N.D. Ill. 2000).

The decision to bifurcate pursuant to Rule 42(b) is made on a case by case basis and is reserved for the sole discretion of the court. *Real*, 195 F.R.D. at 620. The court, however, must be mindful of the factfinder's traditional role to make a determination on the basis of the case presented in its entirety. *Id.* The party seeking bifurcation has the burden of

5

demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials. *Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308, 310 (E.D.N.C. 1998). Thus, "even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice. Essentially, . . . courts must balance the equities in ruling on a motion to bifurcate." *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992).

## A.    A COURT MUST WEIGH COMPETING PREJUDICES

Under Rule 42(b), prejudice is a court's most important consideration when balancing the equities. *Real*, 195 F.R.D. at 621; *see also Corrigan v. Methodist Hosp.* 160 F.R.D. 55 (E.D. Pa. 1995) (stating that separate trials are not granted absent a showing of "compelling prejudice" in criminal cases and that there is no reason to hold civil cases to a higher standard). A court must balance two types of competing prejudices: first, prejudice that may arise because of potential jury confusion about complicated issues if bifurcation is denied; second, prejudice caused by the considerable delay that will result if separate discovery and trials are ordered. *Laitram*, 791 F. Supp. at 115-16. The former can be remedied with cautionary warnings, limiting instructions, special verdict forms, and other instructions to the jury. *Corrigan*, 160 F.R.D. at 57. The latter cannot be remedied except by denying separate trials. *Real*, 195 F.R.D. at 621.

**B.    SEPARATE TRIALS ARE ORDERED ONLY UNDER EXTENUATING CIRCUMSTANCES**

In those cases that have granted motions for bifurcation, the facts and circumstances were such that bifurcation lent itself to judicial economy while not unduly prejudicing any party. Those extenuating circumstances include, but are not limited to, the following: a) a need for voluminous documents to resolve damages issues; b) complex infringement issues; c) multiple patents, infringing products, claims, counterclaims, or parties; or d) the probability that the defendant would prevail on the infringement issue, thereby eliminating the need to address the issue of damages. *Real*, 195 F.R.D. at 621.

**1.    Need For Voluminous Documents to Resolve Damages**

In *Smith v. Alyeska Pipeline Service Co.*, 538 F. Supp. 977, 983 (D. Del. 1982), the court ordered separate trials on the issues of liability and damages when the defendant represented to the court "that to resolve the damage issue will require a review of millions of documents and require extensive time both during discovery and at trial." Similarly, in *Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308, 311 (E.D.N.C. 1998), the court ordered separate trials on a patent case surrounding the alleged infringement of a ranitidine hydrochloride product because "litigating the complex damages issues would place a heavy burden on the [alleged infringer] to produce voluminous documents." The fact that this immensely time-consuming effort might be avoided if the jury found for the defendant in the liability portion of the trial was a factor in favor of bifurcation. *Id.*

### 2.    Complex Infringement Issues

In *Kimberly-Clark Corp. v. James River Corp. of Virginia*, 131 F.R.D. 607, 608-09 (N.D. Ga. 1989), the court set forth eleven factors that a court should consider when deciding whether to order separate trials: 1) convenience, 2) prejudice, 3) expedition, 4) economy, 5) whether the issues sought to be tried separately are significantly different, 6) whether the issues are triable by the jury or the court, 7) whether discovery has been directed to a single trial of all issues, 8) whether the evidence required for each trial is substantially different, 9) whether one party would gain some unfair advantage from separate trials, 10) whether a single trial of all issues would create the potential for jury bias or confusion, and 11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement.  The court then ordered separate trials as to the issues of liability and damages because of the complex nature of the infringement portion of the case.  *Id.* at 609.  The court denied the motion to bifurcate the issue of willfulness from the issue of liability because it found the facts on willfulness to be inextricably bound to the facts of the alleged infringement.  *Id.*

### 3.    Multiple Patents, Infringing Products, Claims, Counterclaims, or Parties

In *Avia Group International, Inc. v. Nike, Inc.*, No. 91-326-JU, 1991 WL 340569, at *9 (D. Or. Nov. 21, 1991), the court ordered separate trials because there were five patents at issue in the case with at least eight allegedly infringing products.  The court reasoned that if the jury finds any one of the patents invalid, unenforceable, or not infringed, separate trials on liability would promote judicial economy by eliminating the need for a damages inquiry

8

on those patents. *Id.* Similarly, in *Paine, Webber, Jackson & Curtis Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1117 (D. Del. 1984), the Court ordered separate trials when at issue was a patent claim, a patent counterclaim, a trademark counterclaim, and a trade secret misappropriation counterclaim surrounding complex financial instruments. The court reasoned that separate trials were appropriate "in view of the complex case to be tried with the allowed additional counterclaims." *Id.*

### 4. Probability that Defendant Would Prevail on the Infringement Issue

Finally, in *Amsted Industries Inc. v. National Castings, Inc.*, No. 93-1333, 1991 WL 106548, at *181-82 (N.D. Ill. July 11, 1990), the judge ordered separate trials because the court's opinion regarding a preliminary injunction found that the plaintiff was unlikely to succeed on the merits at trial. Thus, there was a very likely probability that the issue of damages would never be reached.

## III. DISCUSSION

This Court generally disfavors bifurcation. In *Real v. Bunn-o-Matic Corp.*, 195 F.R.D. 618, 623-24 (N.D. Ill. 2000), this Court explained why it denied bifurcation in a simple patent case involving one patent, one claim, and one allegedly infringing product. Judicial economy is served by bifurcating a case only if a judgment in favor of a defendant obviates the need for discovery and a trial on damages. *Id.* at 623. Even then, however, there is no guarantee that there will not be repeated discovery disputes regarding whether requested discovery is related to liability, damages, willfulness, or all three issues. *Id.* at 624. Each

9

dispute would require the attention of the Court, more paperwork and time by the attorneys, more costs, and possible delays. *Id.* Moreover, in the event that liability is found, judicial economy is not served by the need for two separate trials with two separate juries at remote times. *Id.* In addition, the probability of the existence of overlapping issues between the liability and the damages phases of a trial is high. *Id.* Therefore, a defendant must demonstrate that it will be greatly prejudiced by a single trial in order for this Court to allow bifurcation of a case.

In this case, Defendants have demonstrated that failing to bifurcate discovery and trial on the issue of liability from the issue of damages and not staying discovery on damages will greatly prejudice them and will not serve judicial economy. Bifurcating the issue of willful infringement from the issue of liability, however, is not necessary and can be handled more effectively by employing more creative means of structuring discovery and trial.

## A.    BIFURCATION OF DAMAGES IS APPROPRIATE IN THIS CASE

Circumstances warrant bifurcation of the issue of damages from the issue of liability in this case. This case involves two patents, thirteen claims, six competing defendant groups, sixteen product lines, and several affirmative defenses. This is not one of the smaller or more simple patent cases that have been filed before this Court. *Cf. Real*, 195 F.R.D. at 618 (denying a motion to bifurcate a case involving one patent, one claim, and one allegedly infringing product). Discovery will involve thousands of pages of documents in several languages and potentially hundreds of witnesses from around the world. This Court is not

10

persuaded that extenuating circumstances arise merely because Defendants are international corporations that would have to bear the expense of providing translators and interpreters. Such is the cost of availing oneself to the benefits of the marketplace and the judicial system of the United States, especially in today's growing global economy. Rather, it is the volume of documents and witnesses requiring extraordinary attention that give rise to the extenuating circumstances in this case. In cases in which a defendant would have a heavy burden to produce voluminous documents in connection with discovery on damages, bifurcation is appropriate because "the production and synthesis of these materials may ultimately become unnecessary." *Novopharm Ltd.*, 181 F.R.D. at 311 (bifurcating discovery and trial on damages because consideration of damages "could be complex, involved and time-consuming").

Most of the documents and witnesses in this case will have information relevant either to the liability stage of this litigation or to the damages issue with little, if any, overlapping evidence. Moreover, the damages calculation will be complicated. Under 35 U.S.C. § 284, damages should be awarded to a claimant "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." Damages for a reasonable royalty are "based upon a hypothetical negotiation between a patentee and the infringer when the infringement began." *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512 (Fed. Cir. 1995). Under § 284, a court is allowed to increase damages up to three times the amount assessed or found, such as in the case of willfulness. *Fromson v.*

*W. Litho Plate & Supply Co.*, 835 F.2d 1568, 1572 (Fed. Cir. 1988); *see also Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 824 n.17 (Fed. Cir. 1992) (stating that a court can award three times damages under § 284 but not under § 289, which applies only to profits). This is a mathematical calculation. Although the reasonable royalty theory requires the proof of numerous factors, Defendants must show how the proof of damages in this particular case will be especially complex in order to prevail on the issue of bifurcation. *See Home Elevators, Inc. v. Millar Elevator Serv. Co.*, 933 F. Supp. 1090, 1091 (N.D. Ga. 1996).

In this case, Plaintiff states that summary information is all that is required to calculate damages. Defendants state that the damages calculation will be expert-intensive and complex. The Court agrees with Defendants because of the complexity of the cellular telephones and the multitude of features they offer. Plaintiff's patents relate to one of a number of features in Defendant's cellular telephones. To determine reasonable royalties, the broad and general information sought by Plaintiff is not all that is required. Each of the sixteen accused product lines will have to be analyzed separately and determinations will have to be made for each product line as to the popularity of the allegedly infringing feature and the profitability associated with that feature. Additionally, substantial non-party discovery will be required to determine, for example, how often the allegedly infringing features are used and how consumers value those features.

Furthermore, in balancing the equities of this case, the balance weighs in Defendants' favor. The Court is cognizant of the fact that Defendants are major and direct competitors

12

in the wireless telephone market. The financial information that would become available during discovery on the issue of damages is very sensitive and highly confidential. The Court is mindful of the fact that this case involves a small business going up against major international corporations, which have the resources to absorb expenses and delays more easily than Plaintiff, but the potentially detrimental economic effect of inadvertent disclosure of sensitive financial information outweighs any prejudice to Plaintiff. *See Dynacore Hldgs. Corp. v. U.S. Philips Corp.*, No. 01 CIV. 5012LTSGWG, 2002 WL 31233246, at *4 (S.D.N.Y. Oct. 4, 2002) (discussing a situation in which a judge "was ordering bifurcation of liability and damages discovery due to competitive information concerns," such as the disclosure of "sales information").

Bifurcation of the issue of liability from the issue of damages is appropriate in this case. The volume of documents and witnesses with foreign origins, as well as the complexity of the damages calculation, create extenuating circumstances that warrant bifurcation. More importantly, the balance of equities weighs in favor of Defendants because of the fact that they directly compete with each other in the wireless telephone market and inadvertent disclosure of their financial information would greatly prejudice them.

## B.    BIFURCATION OF WILLFUL INFRINGEMENT IS NOT WARRANTED

Defendants contend that bifurcation on the issue of willfulness is mandated by *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir. 1991), and that attorney-client communications are irrelevant to the issue of patent infringement. Defendants further assert

that issues of willfulness and liability should be bifurcated to avoid the serious risk of prejudice if they are forced to rely upon an advice-of-counsel defense during the liability phase of trial. The Court disagrees.

In order to determine willfulness, a jury must find by clear and convincing evidence that, in light of the totality of the circumstances, a defendant acted in disregard of a plaintiff's patent and lacked a reasonable basis for believing it had a right to do what it did. *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 181 (Fed. Cir. 1994). If a potential infringer has actual notice of another's patent rights, that party has an affirmative duty of due care. *Id.* That affirmative duty normally entails obtaining competent legal advice before performing or continuing any potentially infringing act. *Id.* The legal advice can go to any number of topics, including validity and infringement. *See id.*

As the Federal Circuit acknowledged in *Quantum Corp. v. Tandon Corp.*, defending against willful infringement can place a defendant in a dilemma between the lawful assertion of the attorney-client privilege, thereby risking being found to be a willful infringer, and the avoidance of a willfulness finding, which may create prejudice on the issue of liability. 940 F.2d at 643-44. The Federal Circuit, in dicta, suggested that "[t]rial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera*, reveal that the defendant is indeed confronted with this dilemma." *Id.* at 644. Refusal to bifurcate a trial because of this dilemma, however, does not require reversal. *Id.*

14

Some courts have bifurcated the issue of liability from the issue of willfulness, stayed discovery on willfulness until after liability is established, and noted that willfulness should be tried during the damages stage of the case, all before finding that a *Quantum* dilemma actually exists. *See, e.g., Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 260 (D.N.J. 1997). Such an approach is a quantum leap from the suggestion of the Federal Circuit; it goes beyond what is necessary to preserve the rights of the defendant until an actual *Quantum* dilemma exists. *Neorx Corp. v. Immunomedics, Inc.*, No. 92-2853, 1993 WL 592531, at *2 (D.N.J. May 26, 1993). Although the purpose of the bifurcation under the approach taken by other courts is consistent with the *Quantum* case, the approach itself assumes that willfulness and liability issues do not overlap. *See Avia Group Int'l, Inc. v. Nike, Inc.*, 1991 U.S. Dist. LEXIS 20492, at *8 (D. Or. Sept. 17, 1991) ("willfulness is not relevant to the issue of liability").

This Court disfavors bifurcating liability from willfulness. Following the decision in *THK America Inc. v. NSK Co. Ltd.*, 151 F.R.D. 625 (N.D. Ill. 1993), this Court already has held that willfulness overlaps liability and damages. *Real*, 195 F.R.D. at 625; *see also Kimberly-Clark Corp.*, 131 F.R.D. at 609 (holding that the issue of willfulness went directly to the defendant's state of mind when it infringed on the patent and was a "finding of fact inextricably bound to the facts underlying the alleged infringement"). The Court recognizes that the advice of counsel defense to a claim of willfulness raises legitimate attorney-client

privilege issues. Regardless, privilege or no privilege, if Defendants intend to use such a defense, Plaintiff is entitled to full disclosure to prepare its case. *Real*, 195 F.R.D. at 626.

In this case, there is no evidence that an actual *Quantum* dilemma exists. Plaintiff seeks discovery on possible willful infringement. Moreover, at this time, the Defendants have suggested that they do not have any attorney opinions. Def. Memo. at 11 ("In all likelihood, many of the Defendants *will have obtained* opinion letters from counsel regarding the possible infringement and/or invalidity of the Plaintiff's patents." (emphasis added)). Thus, bifurcation of the issue of willfulness from the issue of liability is not warranted in this case.

The Court, however, is sensitive to the potential *Quantum* dilemma that Defendants face, given what seems to be Plaintiff's imminent threat to allege willful infringement, which has been foreshadowed by its discovery requests for attorney opinions. Defendants urge the Court to follow the lead of those cases that have gone to great lengths to bifurcate the issue of willfulness from the issue of liability, despite finding that an actual dilemma existed for the defendants. Def. Memo. at 10 (citing *Princeton Biochemicals, Inc.*, 180 F.R.D. at 258; *Novopharm Ltd.*, 181 F.R.D. at 312; *Aptargroup, Inc. v. Owens-Illinois, Inc.*, No. 02 C 56058, 2003 U.S. Dist. LEXIS 11475 (N.D. Ill. July 3, 2003)). This Court finds that approach inappropriate and unnecessary.

There exist other, more creative, means of protecting defendants that are faced with nothing more than a potential *Quantum* dilemma while simultaneously avoiding the

16

discovery problems created by bifurcation. For example, in *Kos Pharmaceuticals, Inc. v. Barr Laboratories, Inc.*, 218 F.R.D. 387, 395 (S.D.N.Y. 2003), the court refused to allow bifurcation but stayed discovery with regard to the defendant's counsel's opinions and related documents only, although acknowledging that such documents may be subjected to discovery eventually. Likewise, in *Plasmanet, Inc. v. Apax Partners, Inc.*, No. 02 Civ. 9290BSJTHK, 2003 WL 21800981, at *3 (S.D.N.Y. Aug. 5, 2003), the court recognized that requiring the defendant to disclose its counsel's opinions far outweighed any prejudice to the plaintiff caused by deferring discovery regarding reliance upon those opinions. Consequently, the court permitted discovery to continue on liability issues and damages, while staying discovery on the counsel's opinions. *Id.* The court contemplated that prior to any need for the counsel's opinions to be disclosed, the defendant would move for summary judgment and, if it prevailed, there would be no need for discovery on the opinions and the attorney-client privilege would be preserved. *Id.* Such an approach simultaneously preserves the defendant's rights, allows the plaintiff to determine whether an allegation of willful infringement is meritorious, allows the defendant to determine whether raising the advice-of-counsel defense is necessary, and promotes judicial economy by avoiding any discovery disputes that may have arisen over whether information is related to liability or to willfulness if the case had been bifurcated.

Additionally, the court in *Neorx Corp. v. Immunomedics, Inc.*, No. 92-2853, 1993 WL 592531, at *2 (D.N.J. 1993), after reversing a Magistrate Judge's decision to bifurcate

17

willfulness from liability because the Magistrate Judge failed to review the defendant's documents *in camera*, provided several suggestions about how to proceed. The court suggested that the Magistrate Judge should review the defendant's documents and then proceed in the following manner:

> If the Magistrate decides that early discovery of defendant's documents would unfairly prejudice defendant on the liability issue, the Magistrate could order the issue of willfulness to be severed. Defendant would then have the opportunity after a liability determination was reached to decide whether to assert the reliance-upon-the-advice-of-counsel defense. Conversely, if the Magistrate determines that a defendant would not be unfairly prejudiced by early discovery of its attorney-client communications, the court would be justified in refusing to sever the issue of willfulness and ordering a unified trial. At this point, defendant would be required to make an election regarding his defenses. If defendant chose to assert the advice-of-counsel defense, plaintiff would be entitled to timely discovery of the attorney-client communications. Otherwise, the attorney-client privilege would be preserved.

*Id.* As an alternative to a unified trial, the court suggested not only directing disclosure of the counsel's opinion but also ordering a two-phase trial before a single jury that would address infringement in the first phase and willfulness in the second phase. *Id.* at *2 n.5. Another option suggested by the court is to "require the defendant to make a choice regarding its defenses after reasonable discovery on the other aspects of the case." *Id.*

For the most part, this Court agrees with these approaches because they adopt the proper procedure necessary to protect the rights and interests of all parties while maintaining judicial economy. Procedurally, liability must be determined before willfulness, but there is a significant overlap between the information and the witnesses related to both. Therefore, unifying discovery is necessary and promotes judicial economy. However, discovery of

18

attorney opinions must be stayed until the parties have a better idea of whether willfulness can be alleged and whether an advice-of-counsel defense is appropriate. Doing so preserves a defendant's attorney-client privilege without prejudicing the plaintiff. Having a two-phase trial, whereby one jury hears evidence of liability, deliberates, and then hears evidence of willfulness only if it finds liability, prevents any potential prejudice to the defendant, such as the *Quantum* dilemma, while maintaining judicial economy without prejudicing the plaintiff. Once the two-phase trial is complete, assuming the jury finds liability, the parties have a great incentive to settle the case. If they fail to settle, discovery on the issue of damages begins, resulting in another trial with a second jury.

For these reasons, this Court orders the parties to continue their discovery on the issues of liability and willfulness. The opinions of Defendants' attorneys, however, will be barred from discovery until it is clear that the issues of liability and willful infringement will be tried and that any defendant will raise an advice-of-counsel defense. The stay regarding discovery of such attorney opinions should be revisited after dispositive motions, if any, on the issue of liability are decided. In any event, Defendants will be given a brief period of time before trial to decide if they intend to raise the advice-of-counsel defense, and if so, expedited discovery will proceed on that issue so that the final pretrial order can be prepared, and trial can proceed, on the issues of liability and willful infringement.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court grants in part and denies in part Defendants' motion to bifurcate the issue of liability from the issues of damages and willful infringement. The issue of damages is bifurcated from the issue of liability for discovery and trial. The Court stays discovery and trial on the issue of damages until a decision on liability has been reached. The issue of willful infringement will not be bifurcated from the issue of liability, and the parties are to continue discovery on those issues. The opinions of Defendants' attorneys that relate to the advice-of-counsel defense are barred from discovery until it is clear that the issues of liability and willful infringement will be tried and that any defendant will raise an advice-of-counsel defense. At an appropriate time, the Court will set a date by which Defendants must decide whether they intend to raise that defense.

SO ORDERED THIS 12th DAY OF MARCH, 2004.

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Vasilios D. Dossas
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602

**Attorney for Plaintiff**

Thomas C. McDonough
Robert E. Browne
Timothy M. Morella
NEAL, GERBER & EISENBERG L.L.P.
Two North LaSalle Street, Suite 2200
Chicago, Illinois 60602

**Attorneys for Defendants Sony
Ericsson Mobile Communications
(USA) Inc. and Sony Ericsson Mobile
Communications AB**

Annette M. McGarry / John Letchinger
Gary R. Gillen / Heather A. Boice
Robert L. Wagner
WILDMAN, HARROLD, ALLEN &
DIXON LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606-1229
**Attorneys for Defendants Samsung
Electronics America, Inc. and
Samsung Electronics Co., Ltd.**

Jeanne M. Gills
Marianne C. Holzhall
Meghan K. Quigley
FOLEY & LARDNER
321 North Clark, Suite 2800
Chicago, Illinois 60610

-and-

Stephen D. Huang
John J. Feldhaus
FOLEY & LARDNER
3000 K Street, N.W., Suite 5000
Washington, D.C. 20007-5101

**Attorneys for Defendants Sanyo North
America, Corp. and Sanyo Electric
Co., Ltd.**

Matthew O. Brady
Amy D. Hurley
William A. Rakoczy
LORD, BISSELL & BROOK LLP
115 South LaSalle Street
Chicago, Illinois 60603

-and-

Ruffin B. Cordell
Lauren A. Degnan
Andrew R. Kopsidas
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005

**Attorneys for Defendants Nokia, Inc.
and Nokia Corporation**

Lionel Lavenue
Andrew Chanho Sonu
FINNEGAN, HENDERSON,
FARABOW, GARRETT & DUNNER,
L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, Virginia 20190-5675

-and-

Christopher J. Murdoch
HOLLAND & KNIGHT LLC
131 S. Dearborn Street, 30th Floor
Chicago, Illinois 60603

**Attorneys for Defendant LG Electronics
USA, Inc.**

Edward H. Rice
Natalie J. Spears
Marina N. Saito
SONNENSCHEIN NATH &
ROSENTHAL LLP
8000 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606

-and-

Morton Amster
Abraham Kasdan, Ph.D.
Joseph M. Casino
AMSTER ROTHSTEIN & EBENSTEIN
LLP
90 Park Avenue
New York, NY 10016

**Attorneys for Defendants Matsushita
Electric Corporation of America and
Matsushita Electric Industrial Co.,
Ltd.**

22

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS (Chicago)

WILLIAM REBER LLC,                    )
                                      )
                Plaintiff,            )
                                      )        Docket No. 03-CV-4174
        v.                            )
                                      )
SAMSUNG ELECTRONICS                   )
AMERICAN, INC., et al.,               )        Chicago, Illinois
                                      )        June 10, 2004
                Defendants.           )

REPORT OF PROCEEDINGS
BEFORE THE
HONORABLE MAGISTRATE JUDGE MORTON DENLOW

APPEARANCES:

For Plaintiff:              VASILIOS D. DOSSAS
                            NIRO, SCAVONE, HALLER & NIRO, LTD.
                            181 West Madison Street
                            Suite 4600
                            Chicago, IL  60602

For Defendants:

SANYO Defendants            MARIANNE C. HOLZHALL
                            FOLEY & LARDNER
                            321 North Clark Street
                            Suite 2800
                            Chicago, IL  60610-4714

MATSUSHITA Defendants       NATALIE J. SPEARS
                            SONNENSCHEIN, NATH & ROSENTHAL, LLP
                            233 South Wacker Drive
                            8000 Sears Tower
                            Chicago, IL  60606

NOKIA Defendants            WILLIAM RAKOCZY
                            LORD, BISSELL & BROOK LLP
                            115 South LaSalle Street
                            Chicago, IL  60603

PLAINTIFF'S
EXHIBIT
"B"

APPEARANCES:   (Continued)

For Defendants:

SONY ERICSSON                  ROBERT BROWNE
   Defendants                  TIMOTHY MORELLA
                               NEAL, GERBER & EISENBERG
                               Two North LaSalle Street
                               Suite 2200
                               Chicago, IL  60602

           PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:           Riki Schatell
                          6033 North Sheridan Road, 28-K
                          Chicago, Illinois  60660
                          773/728-7281

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

3

```
1              THE CLERK:  03-C-4174, Reber vs. Samsung.

2              MR. DOSSAS:  Good morning, Judge, Bill Dossas,

3      D-o-s-s-a-s, for the plaintiff, Reber.

4              MS. HOLZHALL:  Good morning, your Honor, Marianne

5      Holzhall, H-o-l-z-h-a-l-l, on behalf of the Sanyo defendants.

6              MS. SPEARS:  Good morning, Natalie Spears,

7      S-p-e-a-r-s, from Sonnenschein, Nath & Rosenthal, on behalf of

8      Matsushita defendants.

9              MR. BROWNE:  Good morning, your Honor, Robert Browne,

10     B-r-o-w-n-e, and Timothy Morella, M-o-r-e-l-l-a, on behalf of

11     the Sony Ericsson defendants.

12             MR. RAKOCZY:  Good morning, Judge, Bill Rakoczy,

13     R-a-k-o-c-z-y, on behalf of the Nokia defendants.

14             THE COURT:  Okay.  How's everybody doing today?

15             MALE VOICE:  Fine, your Honor.

16             THE COURT:  Good.  So you knocked one of the other

17     defendants out of the case already, Mr. Dossas?

18             MR. DOSSAS:  Samsung is out, your Honor.

19             THE COURT:  Okay.

20             MR. DOSSAS:  That leaves four.  We've come to terms

21     with Nokia and Sanyo and we're finalizing those agreements and

22     executing them.  We're hopeful that they will be done in about

23     a week or so.

24             THE COURT:  Very good, okay.  So who does that leave

25     us with?
```

4

1          MR. DOSSAS:  That leave us with Matsushita and with

2     Sony Ericsson.  Matsushita we've been exchanging agreements or

3     proposals, let's say, but we're not close to final there, and

4     Sony Ericsson, nothing.

5          THE COURT:  Okay.  So who wants to speak on behalf of

6     Sony Ericsson?

7          MR. BROWNE:  Your Honor, it's Robert Browne on behalf

8     of Sony Ericsson.

9          THE COURT:  Okay.

10          MR. BROWNE:  We have engaged in some minimal

11     settlement discussions but nothing has been very fruitful at

12     this point.  Part of the reason is that Sony Ericsson feels

13     very strongly they have some good defenses to this case and if

14     you want, since we've all consented to a trial now before your

15     Honor, we can probably, as far as we're concerned, proceed to

16     maybe setting a more definite schedule and also I can kind of

17     relate to you some of the things that Sony Ericsson feels that

18     we need in terms of discovery from the plaintiff at this point

19     that we haven't gotten.

20          THE COURT:  Okay.

21          THE CLERK:  I don't have consents on these.

22          THE COURT:  Well, --

23          THE CLERK:  Is this limited?

24          THE COURT:  No, it looks like -- No, it looks like

25     the consent -- I saw the order from Judge Der-Yeghiayan and it

1    looks like there were consents filed on June 3rd but I'm not

2    sure that they were ever processed.

3           THE CLERK:  Okay.

4           MR. DOSSAS:  Judge, there was a problem with the

5    original consent.  Everyone signed except we inadvertently left

6    out one of the Sony Ericsson defendants, the foreign defendant,

7    so I got a call from Judge Der-Yeghiayan's minute clerk.  We

8    did that the other day, about a day or two ago.

9           THE COURT:  Okay.

10          MR. DOSSAS:  He has a copy of it and now there's

11    nothing, there's no barrier to him processing it.

12          THE COURT:  Okay, it should be processed so we'll

13    operate on the basis --

14          MR. DOSSAS:  Right.

15          THE COURT:  -- that it is a consent case.

16          Well, I mean generally speaking I leave it to the

17    attorneys to work out a mutually-agreeable discovery schedule.

18    If there's a problem I'll get involved but you both know more

19    about what you need to do to put the case in a posture for some

20    kind of decision than I do, so --

21          MR. BROWNE:  Your Honor, yes, I think we can get

22    together and work out some kind of a schedule without any

23    problem.

24          THE COURT:  Okay.

25          MS. SPEARS:  On behalf of Matsushita, we would also

1  participate in those discussions.

2          THE COURT:  Okay.  I mean the real questions I have

3  are what steps are you going to be looking to me to take as far

4  as what are you going to want me to decide and when.

5          MR. DOSSAS:  Well, Judge, we've, from the plaintiff's

6  side, we've given the defendants all our documents.  They've

7  even subpoenaed the other inventors.  There's three or four

8  other inventors.

9          THE COURT:  We had talked about that the last time.

10          MR. DOSSAS:  Yes, and they've gotten all those

11  documents.  We just received the other day documents from Sony

12  Ericsson, and now we're talking about deposition schedules and

13  availability of witnesses, so I think it's proceeding according

14  to plan.

15          THE COURT:  Okay.

16          MR. BROWNE:  Your Honor, on behalf of Sony Ericsson

17  again, the only hole that we have in this is one that we've

18  raised with your Honor before, and that's location of different

19  documents we've asked for from the plaintiff.  We have gone, as

20  Mr. Dossas said, we've gone to the inventors and gotten what

21  little they have.

22          We've also gone out to Motorola and talked to

23  Motorola and Motorola has nothing.  Just so -- My understanding

24  is that Mr. Reber, Dr. Reber, when he was employed at Motorola,

25  worked in a very stand alone type of group.  He wasn't in the

1  cellular technology group.  So Motorola simply says to us that

2  we can't locate any documents.  We can't locate the normal

3  invention disclosures that Motorola requires of their

4  inventors.  We can't locate the patent review documents.  We

5  can't locate any documents regarding the negotiation of the

6  agreement with Dr. Reber to assign these patents.

7          So again, I guess what we'd like to do is take a

8  short deposition of Reber to see where documents are located or

9  even if they existed, or if they've been destroyed, and I think

10  that's necessary because in order to follow up to see are they

11  in this cabinet?  Did you take them?  Did you get them?

12          THE COURT:  Okay.  Didn't I, at the last hearing,

13  require the plaintiff to at least send you a letter and make

14  all those disclosures to you?

15          MR. BROWNE:  And yes, we did get that, your Honor.

16          THE COURT:  Okay.

17          MR. BROWNE:  But the problem is -- And again this is

18  based on our discussions with Motorola, is that they tell us

19  that documents could be, if they exist in different locations

20  physically within their facilities, that they just haven't been

21  able to find because again Dr. Reber didn't operate in any of

22  the traditional business units at Motorola.  So what we need to

23  do is have more than just a letter saying we don't have any

24  documents.  We'd like to probe with Dr. Reber and say did this

25  document ever exist?  If it did, where is it now?

1          THE COURT:  Okay.

2          MR. BROWNE:  So it's just a kind of a location-type.

3          THE COURT:  Well, I also recall I think the last time

4    in the context of potential 30.(b)(6)-type depositions where

5    you were looking for documents and other sort of corporate-type

6    things, I was going to encourage you to do all of that at one

7    time instead of having Dr. Reber brought back seriatim for

8    every different issue that may pop up, and then obviously you'd

9    want to deal with him on the merits or if he was going to be

10   the expert or whatever.

11          I have no problem with you deposing Dr. Reber as long

12   as the last two defendants, I'm going to just treat it as two,

13   can coordinate, Mr. Brown and Ms. Spears, if you can just

14   coordinate and be sure you cover your basic 30.(b)(6) kind of

15   issues in that deposition so he's not being brought back for a

16   number of depositions.

17          MR. BROWNE:  Here's the only practical problem,

18   Judge, that I see with doing a single 30.(b)(6).  I otherwise

19   have no problem with that on the substantive issues.  But the

20   problem with the document location is if Dr. Reber said yes, we

21   did have intention disclosure documents and did do -- go

22   through patent review and we left those in this building under

23   this person's care, then before we can continue with the dep-

24   osition we have to go out back to Motorola and try to find

25   those documents.  So I guess what I'm saying is I simply would

1     like to learn if there's any other documents so that we could

2     prepare for a full deposition of Dr. Reber.

3            MR. DOSSAS: Judge, if I may just respond a little to

4     that, just to give you a little bit more background on the

5     problem here?

6            THE COURT: Okay. Well, here --

7            MR. DOSSAS: All the inventors --

8            THE COURT: Let me just make a suggestion.

9            MR. DOSSAS: Okay.

10            THE COURT: Let me make a suggestion, and that is

11     consider doing a conference call with Dr. Reber, and you ask

12     him all the questions you want in a conference call about the

13     documents. And you know, you can make whatever notes you want

14     and if you want it later confirmed in a deposition that you

15     later take to confirm that that's in fact -- I mean I want to

16     help you --

17            MR. BROWNE: Right.

18            THE COURT: -- locate the documents. I don't want to

19     delay this whole process --

20            MR. BROWNE: No, and that would be fine.

21            THE COURT: And Mr. Dossas, I mean for you to be on

22     the phone and let them ask the questions about where these

23     things are, and find out if he knows anything so we can move

24     the document inquiry along and I'm going to suggest a

25     conference call rather than further letters back and forth

1 because for every question he may ask, there may be a follow-up

2 and a follow-up letter and you know, why can't we cut through

3 all this?

4         MR. DOSSAS: Well, that's basically an informal dep-

5 osition, Judge.

6         THE COURT: Well, but -- Yes, it basically is, right.

7         MR. DOSSAS: Okay. Couldn't we just get a set of

8 questions from him and we'll answer them.

9         THE COURT: Well, but then --

10         MR. DOSSAS: But that's an interrogatory then.

11         THE COURT: Right, and then we're going to keep going

12 back and back and back and back. And you know, I'm trying to

13 avoid multiple depositions but at the same time, if your client

14 is the only person that has the answer to these questions, I

15 don't know why he would be reluctant to get on the phone and

16 talk about -- I mean the discussion would be limited to trying

17 to locate where those documents are, what happened to them.

18         MR. DOSSAS: I doubt that he would have any -- would

19 help Mr. Browne at all, Judge. All of these inventors have

20 left Motorola for years now. They don't -- Under the terms of

21 their agreement, they couldn't take anything away from

22 Motorola.

23         THE COURT: They couldn't.

24         MR. DOSSAS: I don't think so.

25         THE COURT: Okay. But whether they did or didn't is

1 a different question.  I mean --

2    MR. DOSSAS:  Well, we did get some documents from

3 some of these inventors, so a couple of them did have some

4 documents, but I think under the terms of their terminations

5 and everything, I think they were obligated to leave everything

6 behind.  Now as far as --

7    THE COURT:  Well, but if that's the case and your

8 client confirms that and Mr. Browne hears that and Ms. Spears

9 hears that, then they'll do what they have to do.

10    MR. BROWNE:  Right.

11    THE COURT:  But I don't want to delay this so that

12 everybody has to gear up for a formal deposition so you can

13 find out that he doesn't know anything more about the

14 documents.

15    MR. DOSSAS:  That's probably what would happen,

16 Judge.

17    THE COURT:  Well, but --

18    MR. DOSSAS:  The information is with Motorola.  I

19 don't think it's with Mr. Reber.

20    THE COURT:  Okay.

21    MR. BROWNE:  It's not -- If it's with Motorola, they

22 don't know where it is.

23    THE COURT:  Okay, but I'm trying to move this thing

24 along, okay?  And you know, this way if you have a conference

25 call or if your client is someplace else you can still --

1    everybody can be on the phone and you can cover it.

2           MR. DOSSAS:  That's fine.

3           THE COURT:  Okay.

4           MR. BROWNE:  That's fine.  We can set that up, your

5    Honor.

6           THE COURT:  Okay, so then where are we?  Then where

7    are we?  What do you need to do to get this case ready for some

8    kind of decision?

9           MR. DOSSAS:  Well, the documents have essentially,

10   most of them have been exchanged.  We still haven't completed

11   our review of Sony Ericsson's documents and then we're going to

12   start depositions, Judge.

13          THE COURT:  Okay, and how many depositions would you

14   anticipate?  I mean depositions of whom?

15          MR. DOSSAS:  A 30.(b)(6) of Sony Ericsson and

16   Matsushita defendants, at the very least.

17          THE COURT:  On what topics?  On what topics?

18          MR. DOSSAS:  Well, you know, we can't go into damages

19   because of your bifurcation order, so basically infringement,

20   liability.

21          THE COURT:  Okay.  Although I'll tell you now, if you

22   settle with one more, I mean if you're down to one defendant, I

23   may vacate that.  You know, I'd be more receptive to combining

24   infringement and damages if there's only one defendant left.

25          MR. DOSSAS:  Well, maybe that's -- We're hopeful that

1　Matsushita is going to settle soon too, your Honor, and that

2　may be exactly the situation we're faced with.

3　　　　THE COURT:  Okay, because one of my principal

4　concerns was trying to keep everybody else out of everybody

5　else's business, and that will not be as important a concern if

6　we're down to one defendant so there's a possibility.

7　　　　MR. DOSSAS:  Then I think maybe we'll delay the dep-

8　ositions a little bit to see if that happens because we'd like

9　to get everything in one swoop and get all the documents in one

10　swoop, too.

11　　　　THE COURT:  Okay, so what do you suggest we do now

12　with the case?

13　　　　MR. DOSSAS:  Put it over a month or two for another

14　status, Judge.

15　　　　THE COURT:  Okay, and will you have a discovery plan

16　in place and know exactly what you need to do within that

17　period?

18　　　　MR. DOSSAS:  I don't think we have a discovery cutoff

19　date.

20　　　　MR. BROWNE:  No.

21　　　　THE COURT:  No, but by the next time I'd like to set

22　a discovery cutoff date.

23　　　　MR. BROWNE:  Okay.

24　　　　THE COURT:  You know, and I want you to now figure

25　out what your plan is, you know, going forward, tell me how

14

1   much time you need and figure out what it is that you need

2   decided and when and see if you can agree on what you need

3   decided so your clients can know what their rights are.  So

4   does 60 days make sense?

5           MR. DOSSAS:  Yes.

6           MR. BROWNE:  That's fine, Judge.

7           THE COURT:  Okay.

8           THE CLERK:  August 10th at 10:00?

9           THE COURT:  Okay.  Now if the consents are in fact

10  processed, then those of you who are settling bring the

11  dismissal orders to me.  And also -- And this is a constant

12  problem in consent cases -- when people file a case originally

13  there's a caption, and on the caption it will say Judge Der-

14  Yeghiayan and then Judge Denlow.  And then as you keep filing

15  new papers in the case it will always go to Judge Der-Yeghiayan

16  so take his name off the caption when you file things if you

17  expect me to read it because I'm not sure he's going to have a

18  big interest in reading it once it's no longer his case.

19          MR. DOSSAS:  He's a new judge.

20          THE COURT:  He may read everything.  He may read

21  everything.

22          MR. DOSSAS:  He may read everything, yes.

23          THE COURT:  All right, okay.  Anything else?

24          Those of you who are settling, it was a pleasure

25  having you here and I'm sure I'll see you on other cases.  I

1   know I have Ms. Holzhall here pretty regularly on another case,

2   so . . .  Very good.

3            CHORUS:  Thank you, your Honor.

4            MR. DOSSAS:  Thank you, Judge.

5                      (Hearing adjourned.)


        I, RIKI SCHATELL, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.


Riki Schatell                    August 23, 2004
                                      Date